UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHONDEL LARKIN,<br><br>            Petitioner,<br><br>    v.<br><br>D. DAVEY,<br><br>            Respondent. | No. 2:15-cv-0527 TLN GGH<br><br>FINDINGS AND RECOMMENDATIONS |

I.     INTRODUCTION

Petitioner, a state prisoner proceeding pro se, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] He challenges, on due process grounds, a prison rules violation report ("RVR") following a prison disciplinary conviction on the charge of obstructing a peace officer's duties by refusing to accept his assigned housing. Respondent has filed an answer.[2] Upon careful consideration of the record and the applicable law, the undersigned now issues findings and recommendations that the petition be denied.

///

///

---

[1] Petitioner was convicted in 2006 and is serving a determinate term of seventeen years for assault with intent to commit a felony. ECF No. 1 at 1.

[2] Although petitioner was granted an extension of time in which to file a traverse on May 2, 2016, he declined to do so.

1

II.     BACKGROUND

According to the RVR, on August 5, 2013, Sgt. K. McGraw approached a cell occupied solely by petitioner. ECF No. 22-1 at 40. McGraw explained that petitioner would need to take a cellmate in order to accommodate incoming inmates. Id. He also noted that the new cellmate was compatible. Id. Thereafter, McGraw ordered petitioner to accept this new cellmate. Id. Petitioner refused by providing a handwritten note which stated, "I fear for my safety in a cell with other inmates. I am also serving a SHU term for refusing to accept a cellmate." Id. McGraw informed petitioner that petitioner would be receiving an RVR for this conduct.[3] Id.

Investigating Officer Flood took petitioner's statement which reads as follows:

> I fear for my safety in a cell with other inmates and inmate population. On 2-8-12, I was attacked by another inmate, in which I informed prison staff that 'I fear for my safety.' I was then removed from the inmate population for "safety concerns," and placed in AD-SEG (CCR Section 3335(a), pending an investigation. See CDC Form 114-D, dated 2-8-12. The investigation was never conducted. I was also a victim of an in-cell assault, which was reported to prison staff and documented on a CDC Form 1882, Initial Housing Review, dated 5-13-11. See CCR Section 3269 (b)-(d)(2). I continue to inform prison staff of my "safety concerns," but they have been disregarded. See Classification Chrono 128-G, dated 4-4-13 and 6-12-13. Furthermore, I'm currently serving a determinate SHU term for Refusing to Accept Assigned Housing (CCR Section 3269 (c) and 3269.1(d)), so why am I receiving another CDC Form 115? Moreover, inmate Brown (P-96708) has a history of indecent exposure. See CCR Section 3000, 3007, 3328(a)(7), and 3341.6(c)(K)(1)-(2). Therefore, we are not compatible to house together.

ECF No. 22-1 at 41.

At petitioner's disciplinary hearing, petitioner pled not guilty and submitted the aforementioned statement to investigating Officer Flood. ECF No. 22-1, at 42. Petitioner also requested that Investigating Employee Officer Flood interview reporting employee Sgt. McGraw. Id. The senior hearing officer found petitioner guilty of refusing to accept assigned housing, relying on the RVR prepared by Sgt. McGraw and the 1882-B Double Cell Review signed by

---

[3] McGraw noted that petitioner was serving a SHU term for a prior disciplinary for the same offense, dated June 2, 2013, which was the subject of a previous habeas corpus petition filed with this court and denied on May 26, 2015. See Larkin v. Davey, No. 2:14-cv2497 TLN GGH P.

1  Lieutenant J. Prentice which noted that the inmates were compatible and both were Sensitive
2  Needs Yard inmates.[4]  Id. at 42-43.  As a result, a 90-day loss of credit forfeiture was assessed
3  against petitioner, as well as loss of other privileges.  Id. at 42.

4  Petitioner completed the administrative appeals through the third level of review.  His first
5  state habeas corpus petition, filed with the Sacramento County Superior Court, alleged the
6  disciplinary decision was not supported by some evidence, that he was denied a witness at his
7  disciplinary hearing, and that he was actually innocent.  ECF No. 22-1, at 10–12.  In a reasoned
8  decision, the Sacramento Superior Court denied the petition on the merits, and found the actual
9  innocence claim had not been exhausted.  Id. at 2-6.  Petitioner filed a habeas petition alleging the
10 same claims, with the California Court of Appeal, which was summarily denied.  ECF No. 22-2 at
11 2, 4-21.  Petitioner then filed a petition with the California Supreme Court, which was denied
12 with a citation to In re Clark, 5 Cal.4th 750, 767-769 (1993). ECF No. 22-3 at 2-18, 22-4 at 2.
13 Petitioner filed his federal petition, commencing this proceeding on February 23, 2015.  ECF No.
14 1.

15 On February 23, 2016, the district court adopted this court's findings and
16 recommendations, issued January 5, 2016, which recommended denial of respondent's motion to
17 dismiss on the basis of lack of exhaustion and procedural bar.

18 III.    DISCUSSION

19      A.  Standard of Review

20 When it is clear that a state court has not reached the merits of a petitioner's claim, the
21 deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court
22 must review the claim *de novo*.  Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012); Reynoso v.
23 Giurbino, 462 F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th
24 Cir.2003).

25 The state courts need not have cited to federal authority, or even have indicated awareness
26 of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362,

---

[4] Petitioner was cleared by the ICC for double-cell housing with compatible Sensitive Needs Yard inmates on June 12, 2013.  ECF No. 1 at 33.

3

365 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98.

In light of the California Supreme Court's ruling which was based on Clark's abuse of the writ doctrine, and therefore was neither silent[5] nor on the merits, this court must now decide this aspect of petitioner's claim *de novo* under general principles of federal law.[6]

---

[5] Silent denials may allow a "look-back" to previous decisions adjudicated on the merits because it is assumed that the higher, "silent" court relied on those previous merits adjudications. Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S.Ct. 2590 (1991). However, where the higher court rules on a non-merits basis, there is no reason for making the look-back assumption.

[6] The undersigned previously found that petitioner's claim was not procedurally barred despite the state supreme court ruling:

> Based on the California Supreme Court's pinpoint citation to pages 767 through 769 of Clark, it is clear that it relied on the "abuse of the writ" doctrine, and therefore it made a clear and express statement that its judgment rested on a state procedural bar. The abuse of the writ principle in Clark stands for the proposition, however, that repeated attacks through successive petitions are against the same judgment, not a different judgment. Id. at 769-770 (referring to "*a* final judgment," "*the* judgment," and "this judgment"). Nevertheless, this court is aware of no federal authority holding that a prior, separate conviction stands as a procedural bar to a challenge of a subsequent, but separate conviction for a similar offense. Indeed, it is to the contrary. See McNabb v. Yates, 576 F.3d 1028, 1029 (9th Cir. 2009) (further challenging the *same* petition may be successive). Consequently, respondent's attempt to use a successive petition bar fails due to the separateness of the convictions.
>
> Assuming "successive" here means both abusive (raising different claims for the same conviction in a subsequent habeas petition, or truly "successive" (raising the same claims for the conviction in a subsequent habeas petition), the fact is that petitioner is permitted to challenge each conviction in habeas regardless of the "handwriting on the wall." Take for example a bank robber who had several separately tried convictions for a series of bank robberies in different jurisdictions. We could not say that for one, or more, of

4

B.  Applicable Law

A prisoner may challenge a prison disciplinary conviction by petition for writ of habeas corpus if the conviction resulted in the loss of good time credits because credits impact the duration of the prisoner's confinement. Preiser v. Rodriguez, 411 U.S. 475, 487–88, 93 S. Ct. 1827 (1973) (suit seeking restoration of good time credits was "within the core of habeas corpus in attacking the very duration of their physical confinement itself"). In dicta, the court in Preiser noted that such a challenge is permissible even if restoration of the credits would not result in the prisoner's immediate release from prison. Id.

Habeas corpus jurisdiction exists when a petitioner seeks expungement of a disciplinary conviction which falls within the "core of habeas corpus" and which, if successful, would necessarily lead to immediate or speedier release. Nettles v. Grounds, ___ F.3d ____, 2016 WL 4072465 (July 26, 2016) (en banc) (overruling Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989) and Docken v. Chase, 393 F.3d 1024 (9th Cir. 2004)).[7] A claim lies at the core of habeas corpus if it would "necessarily spell speedier release." See Skinner v. Switzer, 562 U.S. 521, 535 n. 13

---

> those convictions, petitioner could not seek habeas corpus on the grounds that insufficiency of the evidence had been decided for a prior conviction, i.e., there is always the chance that the evidence was insufficient for a different, particular conviction. So too for factual due process issues, e.g., for petitioner's safety claim, for one disciplinary, there is always the chance that there was not substantial evidence that he was properly celled. For a legal issue, while collateral estoppel might come into play on the merits, petitioner simply has the right to challenge a separate conviction on previously ruled upon legal grounds—once again—there is always the chance that a court might decide the issue differently for a particular conviction. For these reasons, the undersigned cannot conclude that the successive petition bar was "consistently applied" for this petitioner simply because he had numerous, valid, prior "convictions."
>
> Under the circumstances presented here, this court finds that petitioner's claim is not procedurally barred.

Findings and Recommendations, filed January 5, 2016, ECF No. 19 at 9-10.

[7] In the most recent *en banc* opinion of Nettles, the court found that the invalidity of the disciplinary proceedings and resulting restoration of good time credits would not necessarily affect the length of the sentence in that petitioner was serving an indeterminate life sentence and a variety of factors are considered in determining suitability for parole in such a case, not just the non-existence of a rules violation. Id. at *9.

5

(2011). In this case, petitioner is serving a *determinate* term, and the granting of parole is largely formulaic. Time credits, by their very nature, give a prisoner a shorter term of incarceration. In this case, a restoration of time credits will actually speed the release of petitioner.

While prisoners may not be wholly deprived of their constitutional rights, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution . . . ." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. A prisoner's due process rights must be accommodated to the "legitimate institutional needs" of a prison. Bostic, 884 F.2d at 1269 (*overruled on other grounds by* Nettles, ___ F.3d ___, 2016 WL 4072465 (July 26, 2016)), citing Superintendent v. Hill, 472 U.S. 445, 454–455, 105 S. Ct. 2768 [] (1984). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff, 418 U.S. at 563–71. Confrontation and cross examination are not generally required. Id. at 567.

In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, 105 S. Ct. 2768, citing United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S. Ct. 302, 71 L.Ed. 560 (1927). In Hill, the United States Supreme Court explained that this standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Id. Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455–56. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached

1 | by the disciplinary board." Id.

2 | The Hill Court provided justification for the less demanding standard:

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Id. at 456 (citations omitted).

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Id. at 457. Even where the evidence as in Hill "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. Id. Therefore, if the procedures outlined above are afforded to a prisoner, and "some evidence" supports the decision of the hearing officer decision, the requirements of due process are met. Id. at 455; Bostic, 884 F.2d at 1269–70.

### C. Analysis

#### 1. Due Process Claims

Petitioner contends he was denied his due process rights under Wolff because the guilty findings were not based on "some evidence." He also contends that the denial of his right to call a witness, the reporting employee, deprived him of a fair disciplinary hearing. The Sacramento County Superior Court considered these claims and denied them as follows:

> **Alleged Denial of Witnesses**
>
> In *Wolff v. McDonnell* (19740 418 U.S. 539, the United States Supreme Court held that inmates are entitled to the following due process protections with respect to disciplinary proceedings: (1) advance written notice of the disciplinary proceedings: (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. (*Wolff v. McDonnell, supra*, at pp. 563-567.) However, in

7

doing so, the court stated that the fact that prisoners retain rights under the Due Process Clause 'in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.' (*Wolff v. McDonnell, supra*, at p. 556.) The Court then specifically stated that the confrontation and cross-examination of <u>adverse</u> witnesses in a prison disciplinary proceeding was not constitutionally required. (*Wolff v. McDonnell, supra*, at pp. 567-568.)

An inmate does, however, have a regulatory right to request the presence of adverse witnesses at his disciplinary hearing. (Cal. Code Regs., tit. 15, § 3315, subd. (e).) Prison officials are required to call the requested witnesses unless the official conducting the hearing denies the request for one of the following reasons: the witness's appearance would endanger him or her, the presiding official determines that the witness has no relevant or additional information, or the witness is unavailable. (Cal. Code Regs., tit. 15, § 3315, subd. (e) (1).) The reasons for denial must be documented on the completed 115 RVR. (Cal.Code Regs., tit. 15, § 3315, subd. (e)(2).) In any case, the RE is required to attend the hearing if he or she is specifically requested by the inmate. (Cal. Code Regs., tit. 15, § 3315, subd. (e) (4).)

While petitioner initially requested, prior to the hearing date, that the RE attend his hearing, he subsequently waived this right at his hearing. When the Senior Hearing Officer (SHO) denied his request at the hearing on the ground that the questions he wanted to ask the RE had already been answered in the Investigative Employee's (IE) report, petitioner should have presented any additional questions that he might have had at that time. Instead, he stated that he was ready to proceed despite the absence of the RE. Such action constitutes a waiver of his right to request the presence of the RE. (See *People v. Buford* (1974) 42 Cal.App.3d 975, 983 [appellant's failure to object to witness's presence and/or to request that other witnesses be called must be deemed a waiver of that right].)

Even if the court were to find that the SHO should have required the RE's presence, the failure to do so does not warrant relief on habeas as petitioner has not demonstrated any prejudice. (See *In re Fratus* (2012) 204 Cal.App.4th 1339, at pp. 1351-1352 [harmless error standard used to evaluate denial of witnesses].) Through his IE, he was able to obtain answers to his two questions and has never demonstrated, then or now, that he had any additional questions for the RE. Nor has he demonstrated that the RE might have had information which would exculpate him.

Petitioner's claim is without merit.

**"Some Evidence"**...

...

In any event, petitioner's claim that the evidence was insufficient to support the charge would be meritless.

8

> The standard for judicial review of a finding by a prison hearing officer is whether there is 'some evidence' to support the hearing officer's conclusion. (*Superintendent v. Hill* (1985) 472 U.S. 445, 456-457; *In re Powell* (1988) 45 Cal.3d 894, 903-904.) The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. (*Superintendent v. Hill, supra*, at p. 457.) This standard is met if there was some evidence from which the conclusion of the hearing officer could be deduced. (*Superintendent v. Hill, supra*, at p. 455.) Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. (*Superintendent v. Hill, supra*, at pp. 455-456.) Even just one piece of evidence may be sufficient to meet the 'some evidence' requirement, if that evidence has 'sufficient indicia of reliability.' (*Bruce v. Ylst* (2003) 351 F.3d 1283, at p. 1288; *Cato v. Rushen* (1987) 824 F.2d 703, at p. 705 ['relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board' (citing *Superintendent v. Hill* (1985) 472 U.S. 445, at pp. 455-456)].)
>
> Inmates are prohibited from refusing to accept a housing assignment such as, but not limited to, an integrated housing assignment or a double cell assignment, when case factors do not preclude such. (Cal. Code Regs., tit. 15, § 3005, subd. (c).)
>
> According to documents attached to the petition, Mr. Larkin had been cleared for double cell housing at the time he was asked to accept a cellmate in August 2013. Both he and the intended cellmate were determined to have similar safety concerns and to be compatible for double-celling. Accordingly, petitioner's refusal to accept the intended cellmate constituted a violation of section 3005(c) of the regulations. His assertion that he was originally placed in Ad. Seg. out of concern for his safety, which is not supported by the attached documentation, is irrelevant to his refusal to accept a cellmate in this instance.

ECF No. 22- at 2-6.

Because the "look-through" doctrine does not apply here where the California Supreme Court's decision was not a silent one; fn. 5 <u>supra</u>; the superior court's reasoning is provided for background purposes, and it may be instructive. However, the undersigned has conducted a *de novo* review of the record.

The proceedings in this case met the minimum procedural requirements of <u>Wolff</u>. Prior to the hearing, petitioner received copies of the RVR and all reports to be used in evidence, including the investigative employee's report, which were provided more than 24 hours prior to

9

1  the hearing. Petitioner was assigned an investigative employee. See ECF No. 1at 31; ECF No.
2  22-1 at 40. He was given the opportunity to call witnesses and present documentary evidence in
3  his defense. Petitioner requested Sergeant McGraw, reporting employee, as his only witness;
4  however, the RVR notes that Sgt. McGraw's testimony was already contained in the Investigative
5  Employee's Report, and petitioner waived the right to have this witness present at the hearing.
6  ECF No. 1 at 27; ECF No. 22-1 at 42. Petitioner provided two questions to the Investigative
7  Employee that he wanted asked of Reporting Employee McGraw at the disciplinary hearing, but
8  which the Investigative Employee posed to McGraw prior to the hearing and to which McGraw
9  responded. ECF No. 22-1 at 43. Attached to his petition are three questions which petitioner
10  claims he wanted asked in addition to the two questions which were asked of McGraw. ECF No.
11  1 at 29. Petitioner now states he presented these three additional questions to the SHO who
12  conducted the disciplinary hearing, but these questions are not mentioned in the RVR and are not
13  supported by the remainder of the record.[8] Id. In fact, it was noted in the RVR that "[a]t the time
14  of the disciplinary hearing Larkin indicated he had no further witness issues." ECF No. 1 at 33;
15  ECF No. 22-1 at 42. The RVR also noted that "Larkin did not request for the I.E. to interview
16  any additional witnesses, staff or inmate." ECF No. 22-1 at 44. Petitioner also submitted a
17  written statement through the investigating employee. ECF No. 1 at 32-33; ECF No. 22-1 at 41-
18  42. Furthermore, petitioner requested three documents for the hearing, all of which were supplied
19  by the investigative employee. ECF No. 22-1 at 44. There is no evidence in the record to support
20  petitioner's contention that he requested a witness at hearing and was denied. To the extent
21  petitioner claims he was not afforded the procedural protections required under Wolff, this claim
22  should be denied.
23      The brunt of petitioner's argument is that the disciplinary decision was not based on
24  "some evidence," and that he was denied his right to call witnesses, specifically the Reporting

---

[8] The three questions concerned the disciplinary history and classification level of inmate Brown, the inmate that was assigned to be celled with petitioner. ECF No. 1 at 29. The RVR did specifically state that an 1882-B Double Cell Review was signed by Lt. Prentice, that petitioner was cleared to cell with a Sensitive Needs Yard inmate, and Brown was identified as a compatible inmate. ECF No. 22-1 at 42, 43.

1   Employee, as required under Wolff, which violated petitioner's right to a fair hearing. ECF No. 1
2   at 7. There was "some evidence" to support the decision rendered on the disciplinary charge, in
3   the form of the investigative employee's report, the RVR, and the Double-Cell Review. As to
4   petitioner's claim that he was denied a witness at the disciplinary hearing, the record refutes that
5   claim as petitioner waived his right by conceding that he had no witness issues at the hearing, and
6   did not request that the investigative employee interview any witnesses other than the Reporting
7   Employee. Here, all of petitioner's questions were presented to Reporting Employee Sgt.
8   McGraw and he answered them. Although prison officials may deny a prisoner's request to
9   present witnesses if the witnesses' testimony would be unnecessary, Wolff, 418 U.S. at 566, the
10  officials here did not deny his request because he waived his request and agreed to proceed with
11  the hearing.
12      Even if petitioner's assertion that he was denied a witness was supported by evidence, the
13  right to call witnesses at a disciplinary hearing is not absolute. Wolff gives prison officials
14  flexibility to keep the hearing within reasonable limits and allows them to refuse to call witnesses
15  when doing so would risk reprisal or undermine authority, or when the evidence would be
16  irrelevant, unnecessary, or hazardous. Wolff, 418 U.S. at 566. "[T]he right to call witnesses [is]
17  a limited one, available to the inmate 'when permitting him to do so will not be unduly hazardous
18  to institutional safety or correctional goals.'" Ponte v. Real, 471 U.S. 491, 499 (1985) (quoting
19  Wolff, 418 U.S. at 566); see also Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002)
20  ("[P]risoners do not have the right to call witnesses whose testimony would be irrelevant,
21  repetitive, or unnecessary.") Given these limitations, the Supreme Court has observed that a
22  constitutional challenge to a prison official's refusal to allow an inmate to call witnesses may
23  "rarely, if ever, be successful." Ponte, 471 U.S. at 499. Here, the Reporting Employee's
24  testimony would have been unnecessary as he had already been interviewed by the Investigating
25  Employee who asked all the questions requested by petitioner. As such, these claims should be
26  denied.
27      Based on a *de novo* review of the record, the undersigned finds that petitioner's procedural
28  due process rights were not violated in this disciplinary proceeding, and some evidence supports

the disciplinary decision.  Accordingly, petitioner is not entitled relief.

### 2. Actual Innocence

Petitioner asserts actual innocence under Schlup v. Delo, 513 U.S. 298 (1995).[9]

Although petitioner contends he is actually innocent under Schlup, the undersigned construes petitioner's claim as a Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853 (1993) claim of innocence instead.  The Supreme Court explained the difference between a Schlup claim and a Herrera claim as follows:

> [I]t is important to the explain the difference between Schlup's claim of actual innocence and the claim of actual innocence asserted in Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  In *Herrera*, the petitioner advanced his claim of innocence to support a novel substantive constitutional claim, namely that the execution of an innocent person would violate the Eighth Amendment.[]  Under petitioner's theory in *Herrera*, even if the proceedings that had resulted in his conviction and sentence were entirely fair and error free, his innocence would render his execution a "constitutionally intolerable event."
>
> Schlup's claim of innocence on the other hand, is procedural, rather than substantive.  His constitutional claims are based not on his innocence, but rather on his contention that the ineffectiveness of his counsel . . . and the withholding of evidence . . . denied him the full panoply of protections afforded to criminal defendants by the Constitution.  Schlup, however, faces procedural obstacles that he must overcome before a federal court may address the merits of those constitutional claims.
>
> ***
>
> Schlup's claim thus differs in at least two important ways from that presented in *Herrera*.  First, Schlup's claim of innocence does not by itself provide a basis for relief.  Instead, his claim for relief depends critically on the validity of his *Strickland* and *Brady* claims.  Schlup's claim of innocence is thus not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.

Schlup, 513 U.S. at 313–15.  In this instance, there is no procedural bar to reviewing the merits of petitioner's habeas petition.  As such, the undersigned considers the viability of petitioner's

---

[9] Although the superior court found the actual innocence claim to be unexhausted, (ECF No. 22-1 at 4), this court previously found that the exhaustion requirement was met, and these findings and recommendations were adopted by the district court.  See ECF Nos. 19, 21.

12

Herrera actual innocence claim.

      The standards required to prove a Herrera actual innocence claim set a high hurdle for this petitioner. In Herrera, a majority of the Supreme Court assumed, without deciding, that a freestanding claim of actual innocence is cognizable under federal law. In this regard, the court observed that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." 506 U.S. at 417. A different majority of the Supreme Court explicitly held that a freestanding claim of actual innocence is cognizable in a federal habeas proceeding. Compare 506 U.S. at 417 with 506 U.S. at 419, 430–37; see also Jackson v. Calderon, 211 F.3d 1148, 1165 (9th Cir. 2000) (noting that a majority of the Justices in Herrera would have found a freestanding claim of actual innocence). Although the Supreme Court did not specify the standard applicable to this type of "innocence" claim, it noted that the threshold would be "extraordinarily high" and that the showing would have to be "truly persuasive." Herrera, 506 U.S. at 417. More recently, the Supreme Court declined to resolve whether federal courts may entertain independent claims of actual innocence but concluded that the petitioner's showing of innocence in the case before it fell short of the threshold suggested in Herrera. House v. Bell, 547 U.S. 518, 554–51, 126 S.Ct. 2064 (2006). Finally, the Supreme Court has recently once again assumed, without deciding, that a federal constitutional right to be released upon proof of "actual innocence" exists. District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 129 S.Ct. 2308 (2009). In doing so, the Supreme Court noted that it is an "open question" whether a freestanding claim of actual innocence exists and that the court has "struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet." 557 U.S. at 71.

      The Ninth Circuit Court of Appeals has likewise assumed that freestanding innocence claims are cognizable in both capital and non-capital cases and has also articulated a minimum standard of proof in order for a habeas petitioner to prevail on such a claim. Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir.1997) (en banc). Under that standard "[a] habeas petitioner asserting a

13

freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." Id. at 476–77; see also Jackson, 211 F.3d at 1165. The petitioner's burden in such a case is "extraordinarily high" and requires a showing that is "truly persuasive." Carriger, 132 F.3d at 476 (quoting Herrera, 506 U.S. at 417).

Thus, at minimum, petitioner must show that the new evidence "would be sufficient to establish by clear and convincing evidence that ... no reasonable factfinder would have found [him] guilty of the underlying offense." West v. Ryan, 652 F.3d 1071, 1081 (9th Cir. 2011) (internal quotations and citations omitted). Petitioner cannot meet that burden. In support of his actual innocence argument, petitioner shows that he made several complaints to prison officials regarding his "safety concerns." However, at no point does he claim innocence of the underlying offense—the disciplinary conviction arising from the August 2013 RVR. See ECF No. 1, at 15–17. Petitioner does not argue that he actually complied with Sergeant McGraw's order that petitioner accept a cellmate. Instead, he appears to argue that his subsequent, yet successful appeal of his status as an inmate who can be placed in a double cell reduces his culpability.[10] Reduced culpability is not Herrera actual innocence. See Carriger, 132 F.3d at 476 (actual innocence requires affirmative prove of innocence as opposed to casting doubt on the sufficiency of the evidence).

One can assume that at some point, a prisoner has a substantive due process right to protect himself from situations which present a grave and imminent probability of death or great bodily injury, even if prison officials are the ones unreasonably ordering the prisoner into such a situation. See generally, Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028 (1990) (substantive due process right not to have psychotropic drugs administered unless certain preconditions are met.) See also, Dunn v. Swarthout, 2014 WL 3529915 (E.D. Cal. 2014) (exploring the substantive due process right to self-defense by a prisoner). However, wherever the border line

---

[10] A December 18, 2013 Institution Response for First Level HC Appeal in which petitioner had requested review of his mental health file and requested a recommendation of single cell status by the Institutional Classification Committee, granted the action requested. (ECF No. 22-1 at 56.) On March 19, 2014, the Committee granted petitioner's request for single cell status. (ECF No. 1 at 50-51.) Both of these actions post-date the August 5, 2013 incident at issue here.

for legitimate self-defense should be drawn in the prison context, the situation here falls far short of that line. Petitioner here describes no more than a general fear for his safety based on prison culture and perhaps some bad experiences in the past.

As such, petitioner's actual innocence claim should be denied.

## IV. CONCLUSION

IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 17, 2016

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:016/Larkin527.hc